The first case for argument is United States v. Kenneth Blair. When you're ready, you may proceed. Thank you, your honor.  My name is Oluseyi Olowolafe, and I represent the appellant, Mr. Kenneth Blair, in this matter. This case is about Mr. Blair's fundamental right under the Sixth Amendment to have a fair trial by knowing who his accusers are and the nature of the charges, nature of the evidence against him. I'm here before the court today to ask this court to set aside his convictions on count one and four and his sentence on four reversible errors by the district court. This court should set aside those convictions and sentence because, first, the confidential informant used was a material witness, and the refusal to compel the disclosure of the confidential informant and all exculpatory evidence prior to the pretrial motion deadline greatly hindered Mr. Blair's ability to defend himself at trial. Counsel, would you clear up for me, when did your client learn of the identity? It's not clear to me. The government says he knew about it for months before trial. What's your view on what the record says about that? The record is unclear about exactly when he knew about it, which is the issue at hand. Based upon the government's assertion that Mr. Blair knew that of the identity of the confidential informant, the privilege would therefore be waived and it would no longer exist. And, therefore, it should have been provided to him along with all exculpatory information. So I thought, just to follow up on that, I thought there was some general agreement that he knew at least two months before the trial. Maybe not when he wanted it, but at least by two months before the trial he knew. Is that incorrect? That is not incorrect. In fact, that is when the exculpatory information was provided to Mr. Blair through his attorney and myself, only to be reviewed, not necessarily to be provided in hand. So I guess my question then is we have a line of cases that says where the confidential informant actually testifies at trial, then essentially the error is harmless or there's no error. And I wonder whether that's doubly true here, since you had two months of notice as to who the confidential informant was before the testimony actually happened. Well, that would generally be true. However, in this particular instance, this is a material witness because he was the only person involved with Mr. Blair for count four in that controlled by. He was the only one in the car with Mr. Blair, although there was recordings and law enforcement was in the vicinity, he was the only one. Mr. Blair's reasoning for asking for the confidential informant's identity was also to interview him because being a material witness, it could be used to help Mr. Blair. As the trial indicated, that witness only identified Mr. Blair through his teeth. But if Mr. Blair knew who he was two months in advance, he could have done all those things, right? Potentially, Your Honor, but given the fact that Mr. Blair was in pretrial detention, it somewhat prevented the opportunity or even his whereabouts. Well, or his counsel to have tried to interview him. I mean, who knows whether he would have agreed to an interview. Correct. But if he had two months, how was he prejudiced? Well, he was prejudiced, Your Honor, because the only thing that was provided was a review of that record, not necessarily where that witness was. Or in this instance, all exculpatory evidence. For instance, one of the evidence that came up moments before trial was the Miranda interview through a video, which was different than the reports that were provided in that 67 days prior. But I don't see a Brady or Giglio claim where you say we weren't furnished with the exculpatory evidence in time, which is a different claim than I think the identity of the confidential informant. It is, Your Honor. It is a different claim. And in this particular instance, the motion to compel was what was initially brought up in a pretrial motion in saying, yes, this person's material, this person should be provided in pretrial, the identity as well as the ability to interview that witness. Given the fact that the court denied that motion, the defendant went forward trying his best to prepare, only to find 67 days prior that the information for which he was given was not in totality. Not only was not in totality, but then being prejudiced with not being able to interview him prior to the trial to even provide a rebuttal to the fact of his teeth are not unique. And that was the only way that he was able to identify. The second issue for why this court should set aside the sentence is that during the trial, there was insufficient evidence to support the conviction that failed to demonstrate that Mr. Blair had actual possession of the methamphetamine or constructive possession of the methamphetamine found in the apartment. The third is that Mr. Blair could not meet the pretrial motion deadline regarding Frank's hearing, given the fact that he only received the confidential informant statements 67 days prior, and subsequently the investigation into those statements were far after the pretrial motion deadline. Lastly, the court's use of the testimony by the informants who were admitted liars, drug users, and drug dealers were clearly biased and not credible, and such evidence should not have been used and was improper for the purposes of Mr. Blair's sentencing. This case comes before you on a direct criminal appeal. This case was precipitated on October 28th of 2021 when the confidential informant was picked up by law enforcement having 90 grams of methamphetamine on him. During his Miranda interview, he consistently provided several false statements to law enforcement until he eventually told law enforcement that he knew the person who provided him the methamphetamine as fats or fatty. McCabe ultimately signed a cooperation agreement, and on November 3rd, law enforcement proceeded to conduct a controlled phone call as well as controlled transaction. The controlled transaction was for alleged debt of $10,000, but as the trial had indicated, there was no such debt of $10,000. On November 11th, the confidential informant again used a controlled phone call and precipitated a controlled buy. In this particular instance, the controlled buy occurred in Omaha, Nebraska in a parking area, and the only witness to that that was physically in the car and could physically see the person in the car was the confidential informant. Lastly, on November 18th of 2021, law enforcement arrested Mr. Blair outside an apartment in Nebraska prior to executing a search warrant of that residency, claiming that that residency belonged to Mr. Blair. As we already indicated, Mr. Blair's motion to compel the CIA identity was a material witness, given the fact that he was the only one. He participated. He was not simply a tipster. He was not simply somebody who provided information. He was used in the commission of a crime, therefore allowing Mr. Blair to know his identity well before. And the fact that the court denied it, and then once it was provided, all such evidence should have been submitted to Mr. Blair, and not simply for review, but given to him. So, the fact that Mr. Blair was only allowed to go and review it at the government's office also hindered him in even knowing that there was additional information out there. What about, you know, I know this is kind of beside the point, but the magistrate judge noted it. Doesn't he have a tattoo across his chest that says, I think, stop snitching or stop snitches or something like that? And the district court, I think, may have, or excuse me, magistrate judge, I think, may have been saying, well, I don't know that we want to give him this information a year in advance in case he takes action against the CIA. Yes, Mr. Blair does have tattoos on his body, one that says stop snitching. But simply because somebody has a tattoo on their chest, it goes to their First Amendment rights of freedom of expression. That doesn't necessarily mean Mr. Blair was actually going to do anything. And in this particular instance, there is no evidence that Mr. Blair ever did anything. Now, the government does claim that there is interest in protecting the witness intimidation, but that had nothing to do with Mr. Blair himself. Rather, his expression is stop snitching. We could look into other areas where people are saying all sorts of different things. It doesn't necessarily mean they're going to actually act on them. I do think, though, that particularly if we tie it to the First Amendment, that there is some relevance to it given that what would we think, for example, if he said in open court, right? He said in open court, we need to stop snitches. Snitches are terrible, right? And then the district court or the magistrate takes that into account and says, well, jeez, I don't want to reveal witnesses until the very last moment. I guess my point is I don't know if citing his First Amendment rights here is necessarily the best argument in sort of attacking what the magistrate judge said. Well, in this particular instance, Your Honor, the purpose of his tattoo is, one, again, art. And, two, it wasn't one that he was adamantly disclosing to the public, right? This was a matter of through other photographs for which he had been taken, the government proceeded to use that against him, not that he was openly telling the world that snitches, he was opposed to snitches. The court also erred in denying the motion for acquittal given there was insufficient evidence to support the conviction. In this case, the government lacked evidence of actual possession when it came to the methamphetamine found in the apartment. The government evidently found letters that were addressed to Mr. Blair in the apartment, but those letters, as indicated in the addendum, don't even have the same address for which that apartment is. And the only item that belonged to Mr. Blair, that's addressed to Mr. Blair, that had that address was a utility bill for which the trial indicated themselves as the investigators went through. No one followed up, no one even asked how that utility was even in his name at that address. And simply customized utility, the name that's on the utility bill does not indicate that they actually live at that address. There was no keys or personal belongings belonging to Mr. Blair at that address. At this point in time, your honors, I would like to reserve the remaining for my rebuttal. Very well. Thank you, counsel. Thank you. May it please the court, counsel. My name's Dan Packard. I represent the United States District of Nebraska. I was the prosecutor in this case, and I handled the trial. Defendant was charged with four charges. Two were drug charges, two were gun charges. He was convicted of the drug charges. He was acquitted of the gun charges. The government is respectfully requesting that you affirm both the convictions and the sentences here. I'd like to address the arguments brought up by the court's questioning, and first as it relates to disclosure of the confidential informant. There was never really a hearing on the record where parties had to deduce evidence about what they knew and when, so I have to be careful about telling you what actually is in the record. And what we're limited to is what Mr. Blair concedes in his brief, and that is that he knew about the identity of the informant as of June 23. This is a situation where the government was concerned about the safety of the informant from the very beginning, and once the matter was set for trial in May, this was a trial in Lincoln, and Mr. Oluwilashe was in Omaha, so the materials related to that confidential informant, that is. There was a request for disclosure of the identity of the confidential informant at the pretrial motion stage, right? That's right. I mean, he filed a motion asking for that. What was the government's response? Did the government resist? We did. And did it resist refusing to identify the CI at any time? Our response was that the CI was not a material witness. Well, okay, that strikes me as almost preposterous. You know, obviously he was going to be a witness. He was the only person in the car during one of the transactions. That makes no sense to me. Can you enlighten me? Yeah, you bet. And most of the Eighth Circuit cases deal with informants making buys. That gets into an affidavit for search warrant, and those buys don't get charged, and that's why the courts will say the witness isn't material. Here it's different because the buy was charged. But what's different, I think, about this case is that… That seems to me to be an obvious case where you have to disclose the confidential informant. I was expecting that. I mean, normally you don't disclose it if it's a tipster, and then that person has no further involvement, and the police then do controlled buys with undercover agents, right? Then you don't have to disclose that person. When that person's actively involved, at least when I used to do this, that was something you had to do. I think this situation is different, and there's two reasons. One is the controlled buy was surveilled by law enforcement. I mean, from start to finish, the calls leading up to it were recorded. Law enforcement with the CI right there. The actual transaction was recorded. It was sort of an airtight situation where everything that happened was both seen and heard, and in that scenario, the government can prove up that buy without the informant actually testifying at trial, and who knows if the informant's going to be around at trial. If you go into this saying, yeah, our informant's going to be there, then it doesn't turn out, then that's another error for the defense. So when I was deciding about how to handle this, I'm not going to go in here saying this guy's going to testify, but I'm not going to say he's not going to testify, and in the end, what you're… Okay, but by resisting completely the disclosure, aren't you saying he's not going to testify? And obviously, you changed your mind at some point. No, I don't think the government was willing to vouch for this informant showing up at trial even when you thought he might testify and he didn't. I think that creates problems if you go into it expecting that your informant will testify. I think you misheard my question. My question was when you resisted disclosing the confidential informant's identity, you were telling the court effectively this person will not testify, right? That wasn't our position. You didn't intend to call the person as a witness. I hadn't made – well, the government hadn't made that strategic decision. It was just we needed to protect that informant identity as long as possible, and if it turned out that he was a witness, that's great. But at the time that we were litigating it, it was our position that he was not a material witness. You changed your mind at some point, right? And he became a witness. That's right. All right. I think that's a risky, dangerous way to handle things. You know, I think the better way if you were concerned about the witness's safety is to say we're concerned about the witness's safety, we'll disclose it three days before trial, whatever, some reasonable period of time, and then to have informed the court of that. I mean, I understand what you're saying. I know you can do it sometimes without the informant testifying if you've got all the other, you know, controls in place. But I don't know. This seems to me to be a pretty obvious one where it should have been disclosed. Just as a follow-up, did you immediately disclose once you made the decision that the confidential informant would testify? Or was there a delay even after that? No, there was no – once the matter got set for trial, I was reaching out to the defense right away saying, here's who this person is, here's where the materials are. But again, there wasn't really a formal record on that. So all we have is Mr. Blair admitting that as of June, which was two months before trial, he knew who that was. But I'm telling you, it was well before that. Once that matter got set for trial, it was set for trial end of May, and in early May, May 2, I was in communication with the defense saying, here's the materials, you just come to my office as often as you want, whenever you want, to review what you've got. And those materials included police reports documenting what happened with the CI, his arrest, his criminal history, his work agreement with the police. The Lincoln Police, when they document an investigation, they have a listing of reports, all the police reports and all the property. And in that property was a DVD, and that was the Mirandized interview with Mr. McCave. I didn't know about it, but it was in there. It was in those materials, so we both knew about it, but I never ordered a copy of the disc. So in the middle of the trial, when McCave's testifying, it comes out that he gave a Mirandized interview, and that's the disc or the DVD statement that Mr. Blair is now talking about. So what happened in trial is the night before, Mr. Blair asked me for a copy. That morning, I gave him a copy, and the judge said, you can listen to that over the noon hour, and it was later in the afternoon that Mr. McCave testified. Substantively, the Miranda interview was summarized in a police report. So about a two-page, single-spaced police report, the same content was in there that Mr. Blair had. So there was no materially different thing that Mr. McCave had said in the Miranda recorded interview. It was boiled down into a police report, which he had all along. So in terms of a general allegation of the government not divulging exculpatory information, on appeal here, that's not an issue. There's not an alleged Brady violation or Giglio violation, but just as a matter of fairness, that's how that came up. I'd also like to address the Franks issue. The standard is abuse of discretion. It was three days before trial and seven months after the pretrial motion deadline that Mr. Blair asked for this Franks hearing. It was during that June review when Mr. Blair would have had an opportunity to see those materials. So essentially, as your questions indicated, he had about two months to file any kind of Franks motion. The district court denied it because he didn't show good cause and he addressed the merits. But he couldn't have, I mean, if that disclosure happened two months before, there's no way he could have met the seven-month before pretrial motions deadline, right? Correct. Does that create a problem for you in the sense that maybe the district court should have been more lenient given that he only had it really late in the process and had requested it earlier? I guess just practicing it in that district, I know that had there been a substantive motion like that after the pretrial motion deadline, the government wouldn't have fought it, especially given our late disclosure. It just didn't happen until late in the game. We were all ready for trial. We'd had the pretrial conference maybe a week or two before, and nothing was brought up about, hey, this is coming. But you're right. You're right. I think the judge, that's why the judge addressed both the merits of the Franks motion and the good cause element for continuance. And essentially, on the merits, there were two issues that were brought up. The CI was not correct, possibly, about how much his drug debt was to Mr. Blair. That's one issue. And the second issue is, did McCabe, the CI, say he bought drugs at Mr. Blair's Omaha apartment? And there really was no factual dispute about that. When McCabe was arrested in October of 2021, he said, I drive to Omaha and there's an apartment complex. Blair texts me and I go to a parking lot. I don't know the apartment number I buy from him at apartment parking lot, and that's the same information that was included in the affidavit for search warrant. So there really was no material misstatement or omission there. Finally, Mr. Blair addressed the sufficiency of the evidence and Mr. Blair's argument relates to the sufficiency of November 18th when there's a search warrant. This was a constructive possession case. Police found, in a bedroom, a pink bag next to the bed. On the top of the bag was a letter addressed to Kenneth Blair. Underneath that letter was a pound of methamphetamine. Under a mattress feet away was a loaded handgun. In a dresser just feet away was $1,000 of narcotics unit buy money that the CI, Mr. McCabe, had given to Mr. Blair just a week before. Those were sufficient facts for the jury to find the defendant guilty on count one, possession with intent to distribute. With respect to the argument regarding using uncharged drug weight, the law is well settled. Witness credibility is a judgment called by the trial court and it's essentially unassailable on appeal. With that, Your Honors, I don't have anything else and I would rest based on my brief if you don't have any other questions. Hearing none, thank you. Thank you. Thank you. Mayor, Police, Court, Your Honors, the question asked about whether the CI was a material witness, the government offers that the entire transaction on November 11th was surveilled. But that's not entirely accurate. What the record indicates is law enforcement saw Mr. Blair go to an apartment, go inside the apartment, 13 minutes later exits, drive down the street. They didn't follow Mr. Blair. Mr. Blair parks. Mr. McCabe was driven up by an undercover officer who parked a distance away and Mr. McCabe got out of the car and got into a car with Mr. Blair. That's not being surveilled the entire time. That's simply an inaccurate statement. The purpose for wanting the CI's information goes back and why the rule that says that it's harmless once he testifies is incorrect is because the ability to investigate his credibility, motives, and prejudices prior to trial, not during the midst of a cross-examination. You could probably tell from my questions that I think that it should have been disclosed. But I'm still having a hard time figuring out how you were prejudiced. You had two months. Does the record reflect efforts to do an investigation that were throttled that somehow couldn't be done in two months? The record does not, Your Honor. What the record does reflect is efforts being made to prepare for trial for which a Frank's Hearing application was submitted. A submission was also for continuance given the fact that there was another informant that the government then found and provided to the defense. What has occurred is what generally happens in a trial, which is things come up and other evidence comes up for which the defense is now ascertaining within the 67 days that he was found of that information to balance it all out. And in that 67 days, efforts were made in other areas. But in that particular area, the record is silent. Your clock never started. My clock did not start, so I have no idea. I apologize. The issue with the Frank's Hearing, this court has, or the circuit, mind you, has recognized it as unsettled question in the circuit whether the issue was waived or whether plain error review was available. We are asking this court to conduct a plain error review, and in order to succeed on that, Blair must show that there was an obvious error that affected his substantial rights and seriously affected the fairness, integrity, and public reputation of judicial proceedings. Here, Blair unfairly was unable to assert his rights on the Fourth Amendment to challenge the validity of the statements made in that warrant application. He didn't have the statements prior to in the pretrial. As he's investigating this 67 days prior, he's coming up with this information. He is asserting this information. And for him not to be able to challenge it then means the government has the ability to then introduce it into the trial without any ability to object on the basis of the warrant being invalid. That goes into his rights. That's why he was prejudiced. The government wants to say that it's simply on the statements that the CI did not make the statements that the residency was Mr. Blair's, but the application does. And that's where we base this on is the application was materially false. That residence did not belong to Mr. Blair, which leads into the constructive possession that he did not have dominion, power, or control over that residence. At no point in time, the record is clear, you won't find fingerprints, you won't find personal belongings, you won't find keys. Didn't they find the McCabe buy money there? They did find the buy money there. And yet, that buy money, Your Honor, could have changed hands. Could have. Could have. We don't know. But what we do know is Mr. Blair did not live there. And therefore, Mr. Blair. It was his girlfriend's apartment, wasn't it? The government would like to say it's his girlfriend. We will call her an acquaintance. Okay. Yes. Very well. I think your time has expired and then some. But court appreciates your willingness to accept the CJA appointment. Thank you, Your Honor. And thank you to both counsel for your appearance today.